```
           IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF TEXAS
                  CORPUS CHRISTI DIVISION
```

| | |
|---|---|
| MELHEM NAJIB IBRAHIM, | § |
| | § |
|     Plaintiff, | § |
| | § |
| v. | §   Civil Action NO. C-05-139 |
| | § |
| DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, KENNETH PASQUARELL, DISTRICT DIRECTOR, SAN ANTONIO; and ALBERTO GONZALES, ATTORNEY GENERAL OF THE UNITED STATES, | § |
| | § |
|     Defendants. | § |

### ORDER ADDRESSING "MOTION TO DISMISS AND ALTERNATIVELY TO HOLD IN ABEYANCE"

On this day came to be considered Defendants' "Motion to Dismiss and Alternatively to Hold in Abeyance" filed in the above-styled action. After reviewing the submissions of the parties, the Court finds that the Motion should be DENIED. As previously Ordered (and as agreed to by the parties), a bench trial will be conducted in this matter on November 15, 2005.

### I. Background

Plaintiff, a citizen of Lebanon, was admitted to the United States as a Lawful Permanent Resident alien in 1977. Since that time, his status has not changed.

On May 5, 2004, Plaintiff filed an application for naturalization with the U.S. Citizenship and Immigration Services ("USCIS").

On July 23, 2004, the USCIS requested Plaintiff to appear on September 11, 2004, to provide a set of his fingerprints for processing by the Federal Bureau of Investigation ("FBI"). On September 11, 2004, as requested, Plaintiff appeared and provided a set of his fingerprints for FBI processing.[1]

On October 29, 2004, a USCIS officer conducted an interview of Plaintiff concerning the naturalization application. The officer told Plaintiff that he had passed the English, U.S. Government and history tests, but a decision could not be made on his application because additional documents were requested. On November 4, 2004, Plaintiff responded by sending the requested documents.

On March 18, 2005, because the USCIS still had not made a decision on his application, Plaintiff initiated the instant action, seeking a hearing on the merits of his naturalization application, and ultimately requesting a declaratory judgment that he is a naturalized citizen of the United States.

In the "Joint Discovery Case Management Plan," filed April 29, 2005, the parties state that "[s]ubsequent to the filing of the instant complaint, the defendant has issued a notice to appear

---

[1] According to Defendants' "Motion to Dismiss and Alternatively to Hold in Abeyance," the "USCIS submitted Plaintiff's name and [finger]prints on July 9, 2004." (Motion to Dismiss and Alternatively to Hold in Abeyance at 6.) However, Plaintiff's Complaint asserts that Plaintiff provided his fingerprints on September 11, 2004. (Compl. ¶ 16.) As discussed below, this factual discrepancy is not material to the resolution of Defendants' motion.

(immigration charging document) to the plaintiff, allegedly placing him in removal proceedings in a San Antonio immigration court in case number A 21 270 332." (Joint Discovery Case Management Plan, Docket Entry 14, at 2.)  At the initial pretrial conference ("IPTC") before this Court on May 10, 2005, the parties each stated that Plaintiff had been served with a Notice to Appear, but the Notice to Appear had not yet been filed with the immigration court.

Subsequently, Defendants filed their "Motion to Dismiss and Alternatively to Hold in Abeyance," conceding that Plaintiff "is entitled to petition the Court for a hearing on his application for naturalization pursuant to 8 U.S.C. § 1447(b) ... because more than 120 days passed since the date of the examination of the Plaintiff's application." (Motion to Dismiss and Alternatively to Hold in Abeyance at 7.)  However, Defendants argue that Plaintiff fails to state a claim because a district court has no authority to naturalize a citizen, as Plaintiff requests this Court to do in his Complaint.  Alternatively, Defendants ask the Court to dismiss or stay proceedings for two independent reasons: (1) because the FBI has failed to complete the required fingerprint and background checks of Plaintiff; and, (2) because (according to Defendants) the Notice to Appear has placed Plaintiff in removal proceedings, which could result in any decision by the Court being rendered moot.

**II.  Discussion**

Plaintiff invokes the jurisdiction of this Court pursuant to 8 U.S.C. § 1447(b), which provides:

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b). The parties agree that an examination pursuant to § 1446[2] occurred on October 29, 2004, and no decision was made by the USCIS within 120 days thereafter. Indeed, Defendants concede that "the Court could assume jurisdiction from [§ 1447(b)]." (Motion to Dismiss and Alternatively to Hold in Abeyance at 7.)

However, Defendants take issue with Plaintiff's request for "a declaratory judgment that he is a naturalized citizen of the United States." (Compl. at 8.) Defendants argue that this Court has no authority to render such a judgment.

Defendants are technically correct: 8 U.S.C. § 1421(a) provides that "[t]he sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General." However, the plain language of § 1447(b) allows a district court to assume jurisdiction over the naturalization

---

[2] Section 1446 governs the initial examination of applicants for naturalization. See 8 U.S.C. § 1446.

application of any applicant who has not had his application decided within 120 days of the § 1446 examination. According to § 1447(b): "Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter." The only courts to have addressed the issue have held that once the district court's jurisdiction is invoked pursuant to § 1447(b), <u>exclusive</u> jurisdiction over the naturalization application vests with the court, and the USCIS loses the power to rule on the application. <u>See</u> <u>U.S. v. Hovsepian</u>, 359 F.3d 1144, 1159-63 (9th Cir. 2004) (en banc) (holding that "[u]nder § 1447(b), the court has the last word by exercising <u>exclusive</u> jurisdiction over those naturalization applications on which [USCIS] has failed to act in a timely fashion") (emphasis added); <u>Castracani v. Chertoff</u>, 377 F. Supp. 2d 71, 75 (D.D.C. 2005) ("When [the applicant] did file suit on July 1, 2004, this court obtained exclusive jurisdiction over his naturalization application. ... Therefore, in the absence of any evidence indicating that [USCIS] approved [the applicant]'s application before July 1, 2004, [USCIS]'s adjudication of [the applicant]'s application is invalid, and jurisdiction lies exclusively with this court to either approve his application or remand it to [USCIS] with instructions.").

This Court must, if possible, give effect to both § 1421 and § 1447. <u>See</u> <u>Jackson v. Stinnett</u>, 102 F.3d 132, 135-36 (5th Cir.

1996) (citing, inter alia, Posadas v. Nat'l City Bank of New York, 296 U.S. 497, 503 (1936) ("Where there are two acts upon the same subject, effect should be given to both if possible.")). This can be readily accomplished: while this Court may not naturalize Plaintiff (since § 1421(a) confers "sole authority to naturalize persons ... upon the Attorney General"), this Court is empowered by § 1447(b) to "either determine the matter [i.e., the merits of Plaintiff's naturalization application] or remand the matter, with appropriate instructions, to the [USCIS] to determine the matter." Reading § 1421(a) and § 1447(b) together, Plaintiff may ask this Court to conduct a hearing and render a determination of the merits of Plaintiff's application, and (if the Court finds for Plaintiff) order the Attorney General (via the USCIS) to naturalize Plaintiff. Cf. Levy v. I.N.S., 6 Fed. Appx. 331, 332-33 (7th Cir. 2001) ("[There was] a time when district courts had exclusive jurisdiction to grant or deny applications for naturalization. The Immigration Act of 1990 shifted this jurisdiction to the Attorney General, however, see 8 U.S.C. § 1421(a) (vesting the Attorney General with exclusive authority over naturalization proceedings), and under the current law district courts have jurisdiction only in cases where the INS ... neglects to rule on it within 120 days of conducting a naturalization interview, see 8 U.S.C. § 1447(b)."); Ogunfuye v. Acosta, 2005 WL 1607034, at *2 (S.D. Tex., July 1, 2005) ("The district courts have jurisdiction over naturalization

applications ... when the Attorney General has conducted an examination but fails to issue a ruling within 120 days of that examination, 8 U.S.C. § 1447(b).... In all other situations, the Attorney General has the sole authority over naturalization proceedings. 8 U.S.C. § 1421(a)."). The Court interprets this to be the relief Plaintiff is requesting in his Complaint. To the extent Plaintiff asks for relief beyond what is available through § 1447(b), the Court declines to dismiss Plaintiff's entire action on this technical basis. See 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."); Whitmire v. Victus Ltd., 212 F.3d 885, 887-88 (5th Cir. 2000) ("We have repeatedly noted that [28 U.S.C.] § 1653 is to be broadly construed to avoid dismissals of actions on purely 'technical' or 'formal' grounds.") (citing, inter alia, Goble v. Marsh, 684 F.2d 12, 17 (D.C. Cir. 1982) (in enacting § 1653 "Congress intended to permit amendment broadly to avoid dismissal of suits on technical grounds")).

The Court also declines to dismiss or stay Plaintiff's action on the grounds that the USCIS is awaiting the FBI to complete the required fingerprint and background checks of Plaintiff. Defendants provide no legal authority for the proposition that a district court has the discretion to decline the jurisdiction § 1447(b) unambiguously confers. The USCIS complains that the delay in processing Plaintiff's application is attributable to the FBI,

which apparently has been overwhelmed with requests for background checks. However, the USCIS exposed itself to the risk of having § 1447(b) invoked when it failed to follow its regulations.

Specifically, 8 C.F.R § 335.2 provides:

> The Service will notify applicants for naturalization to appear before a Service officer for initial examination on the naturalization application only after the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed.

8 C.F.R. § 335.2(b) (emphasis added). Here, in contravention of § 335.2 (and as conceded by Defendants), the USCIS conducted an initial examination of Plaintiff prior to "receiv[ing] a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed." This exposed the USCIS to the risk that more than 120 days would pass prior to the completion of the FBI background check. Now that more than 120 days have elapsed and Plaintiff, as was his right, invoked this Court's jurisdiction pursuant to § 1447(b), the Court will not invent an exception to § 1447(b) to relieve the USCIS of the consequences of its failure to follow § 335.2(b).

Defendants' second basis for requesting a dismissal or stay of these proceedings is that, because (according to Defendants) Plaintiff is in removal proceedings, any decision by the Court on the naturalization application could be rendered moot. Defendants are correct that if removal proceedings had been commenced against Plaintiff (a proposition which will be discussed infra), this Court

likely would stay these proceedings until the conclusion of the removal proceedings.

According to 8 U.S.C. § 1429:

> [N]o application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act.

8 U.S.C. § 1429. This provision seeks to prevent concurrent consideration of a naturalization application and removal proceedings. As one court recently stated:

> It is important to recall that while authority to naturalize aliens was vested in the district courts until 1990, removal of aliens was the province of the Attorney General. And until 1952, when § 1429 was adopted, the usual practice had been 'for both the [removal] and naturalization processes to proceed along together until either [the] petitioner's [removal] or naturalization ipso facto terminated the possibility of the other occurring.' Shomberg v. United States, 348 U.S. 540, 543 (1955). Section 1429 was designed to end this 'race between the alien to gain citizenship and the Attorney General to deport him.' Id. at 544. That objective was accomplished by according priority to removal proceedings.

Zayed v. U.S., 368 F.3d 902, 905 (6th Cir. 2004).[3]

However, § 1429 only refers to "the Attorney General," which could be read to mean that a court considering a naturalization application is not prevented from conducting its review by pending removal proceedings. Courts are split on the question of whether

---

[3] "A person who has been naturalized cannot be removed, and a person who has been removed cannot be naturalized." See Zayed, 368 F.3d at 905 n.4.

a district court has jurisdiction to review a naturalization application if the individual is in removal proceedings. Three district courts have held, based upon § 1429, that they lacked subject-matter jurisdiction to review a naturalization application if there is also removal proceedings pending. See Apokarina v. Ashcroft, 232 F. Supp. 2d 414 (E.D. Pa. 2002); Tellez v. U.S. I.N.S., 91 F. Supp. 2d 1356 (C.D. Cal. 2000); Mosleh v. Strapp, 992 F. Supp. 874 (N.D. Tex. 1998). Three other district courts have held that § 1429 did not strip them of jurisdiction, and have proceeded to consider the merits of the alien's application. See Ngwana v. Attorney General of U.S., 40 F. Supp. 2d 319 (D. Md. 1999); Gatcliffe v. Reno, 23 F. Supp. 2d 581 (D.V.I. 1998); Saad v. Barrows, 2004 WL 1359165 (N.D. Tex. 2004) (considering merits of the application, but finding applicant ineligible for citizenship for other reasons). The reasoning in these cases is that the USCIS should not be allowed to thwart de novo judicial review by placing an applicant in removal proceedings. However, these courts have stopped short of actually ordering the USCIS to naturalize the plaintiff. The only one of these cases to both reach the merits and find in plaintiff's favor was Gatcliffe, where the district court issued a ruling that "but for the pendency of the deportation proceedings, [plaintiff] is fully qualified for naturalization." Gatcliffe, 23 F. Supp. 2d at 585.

Most recently, the Sixth Circuit found that § 1429 does not divest a district court of jurisdiction to review a denial of naturalization while removal proceedings are pending. See Zayed v. U.S., 368 F.3d 902, 906 (6th Cir. 2004). Despite this finding, the court held that the statutory scheme prevented the court from granting meaningful relief. Noting that the exclusive authority to naturalize rests with the Attorney General, see 8 U.S.C. § 1421(a),[4] the Sixth Circuit found that § 1429 bars the Attorney General from exercising this authority while removal proceedings are pending. As a result, the Sixth Circuit found that the district court could not order the Attorney General to grant an application while proceedings were pending, and thus could not order meaningful relief. See Zayed, 368 F.3d at 906.[5]

In summary, no court has found it has the authority to order the Attorney General to naturalize a person against whom removal proceedings are pending. The only dispute among the courts is whether, during the pendency of removal proceedings, a court may consider the merits of a petitioner's naturalization application

---

[4] Specifically, the statute provides: "The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General." 8 U.S.C. § 1421(a).

[5] Zayed was reviewing a denial of a naturalization application, while this case presents the review of the delay in adjudicating a naturalization application, but the distinction is immaterial for deciding the instant Motion.

and issue a decision <u>contingent upon</u> the petitioner prevailing in the removal proceedings.

However, at this time, this issue is not ripe for decision because Defendants have failed to establish that removal proceedings are pending against Plaintiff. In their Motion, Defendants state:

> USCIS has issued a Notice to Appear as of April 14, 2005 and served it on the Petitioner and his counsel. By commencing removal actions against the Plaintiff, USCIS has in effect made the Plaintiff's status within the United States an issue.

(Mot. to Dismiss and Alternatively to Hold in Abeyance at 8.) Throughout the remainder of the Motion, Defendants assume, without citation to authority, that <u>service</u> of a Notice to Appear on the Plaintiff is alone sufficient to commence a removal action. However, the Fifth Circuit has expressly rejected the contention that removal proceedings commence when a charging document is served on the alien; instead, the court "h[e]ld that removal proceedings commence when the INS files the appropriate charging document with the immigration court." <u>DeLeon-Holguin v. Ashcroft</u>, 253 F.3d 811, 815 (5th Cir. 2001). Subsequently, this rule was codified in the relevant regulations. <u>See</u> 8 C.F.R. § 1239.1(a) ("Every removal proceeding conducted under section 240 of the Act (8 U.S.C. 1229a) to determine the deportability or inadmissibility of an alien is commenced by the filing of a notice to appear with the immigration court.").

At the May 10, 2005 IPTC, Defendants conceded that while they had served Plaintiff with a Notice to Appear, they had not yet filed the Notice to Appear with any immigration court.[6] Since that time, Defendants have not asserted (much less demonstrated with evidence) that the Notice to Appear has been filed with an immigration court.  Hence, there is no showing that removal proceedings have been commenced against Plaintiff, and this Court need not decide the question of whether on-going removal proceedings require a court to stay an action brought pursuant to § 1447(b).  Therefore, Defendants' Motion to Stay will be denied.

Finally, the Court notes that on August 30, 2005, Plaintiff filed a Motion for Summary Judgment, asking the Court to decide that Plaintiff is entitled to be a naturalized citizen.  However, not only did this Motion not contain any new evidence (or arguments) than what was attached to the Complaint, it failed to comply with the Local Rules of the Southern District of Texas and therefore will be stricken from the record pursuant to a separate Order.[7]  The dispositive motion deadline--August 31, 2005 (a day

---

[6] Defendants' attorney stated at the IPTC that "it is [USCIS] that will actually file [the Notice to Appear] with the [immigration] court and begin removal proceedings.  That has not been done yet."

[7] Specifically, the Motion did not provide the moving attorney's state and federal bar numbers and did not contain a separate proposed order.  See S.D. Tex. L.R. 7.1(C), 11.3(A).

after Plaintiff filed the Motionfor Summary Judgment)--has now passed.

During the IPTC, all parties agreed to an expedited schedule whereby a bench trial would be conducted November 15, 2005.  The bench trial will proceed as scheduled, at which time Plaintiff will have the opportunity to demonstrate, through admissible evidence, that he meets each of the applicable requirements of naturalization.[8]  See, e.g., 8 U.S.C. § 1427 (setting forth the requirements for naturalization).

### III. Conclusion

Defendants' Motion to Dismiss and Alternatively to Hold in Abeyance is DENIED.  As previously Ordered (and as agreed to by the parties), a bench trial will be conducted in this matter on November 15, 2005.

SIGNED and ENTERED this 13th day of September, 2005.

_____
Janis Graham Jack
United States District Judge

---

[8]  The Court notes that the stricken Motion for Summary Judgment failed to specifically enumerate the requirements for naturalization; it also failed to designate specific items of evidence which demonstrated the absence of a genuine issue of material fact as to each requirement.