IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MELHEM NAJIB IBRAHIM, § | |
| § | |
| Plaintiff, § | |
| v. § | Civil Action No. 05-139 |
| § | |
| DEPARTMENT OF HOMELAND SECURITY; § | |
| UNITED STATES CITIZENSHIP AND § | |
| IMMIGRATION SERVICES, § | |
| KENNETH PASQUARELL, DISTRICT DIRECTOR, § | |
| SAN ANTONIO; and ALBERTO GONZALES, § | |
| ATTORNEY GENERAL OF UNITED STATES, § | |
| § | |
| Defendants. § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

On November 15 and 16, 2005, the above-captioned case came on for trial before the Court. After consideration of all evidence presented as well as the argument of counsel, this Court enters the following Findings of Fact and Conclusions of Law.

**I.   Jurisdiction**

The Court has jurisdiction to consider Plaintiff's naturalization application pursuant to 8 U.S.C. § 1447(b).

**II.   Procedural History**

On May 5, 2004, Plaintiff filed a naturalization application with the United States Citizenship and Immigration Services (USCIS). On October 29, 2004, a USCIS officer interviewed Plaintiff and informed him that a decision had not been made on his naturalization application. On March 18, 2005, pursuant to 8 U.S.C. § 1447(b), Plaintiff initiated the instant proceeding, requesting this Court to hold a hearing on the merits of his naturalization application, and if appropriate, to declare him a

naturalized United States citizen. The Court conducted a bench trial to consider the matter on November 15 and 16, 2005.

### III.  Findings of Fact and Conclusions of Law

During the trial, Plaintiff testified and called three additional witnesses: (1) Craig Hill, Plaintiff's long time friend; (2) Robert Berg, a former Assistant United States Attorney who was involved in the prosecution of Plaintiff's tax evasion offense and who subsequent to leaving the United States Attorney's Office was retained as counsel by Plaintiff on several unrelated cases, and (3) Crista Walton, Plaintiff's bookkeeper. Defendants called two witnesses: (1) Teresa DeMouy, the USCIS officer who interviewed Plaintiff on October 29, 2004; and (2) Kathy Hubble, an Internal Revenue Service (IRS) agent familiar with Plaintiff's income tax return filings.

The Court finds by a preponderance of evidence the following facts and makes the following conclusions of law:

### Background

1. Plaintiff, a citizen of Lebanon, was admitted to the United States as a Lawful Permanent Resident in 1977. Since then his status has not changed. Plaintiff has four children. Three of them are United States citizens. The remaining one, a daughter, is a citizen of Lebanon, and she is living with Plaintiff's current wife in Lebanon.

2. Plaintiff manages and operates several bars and clubs in the Corpus Christi area. His main source of income in the United States since the 1980s has been the proceeds from these establishments. During the first day of trial, Plaintiff insisted that he did not own any of the establishments; however, during the second day of trial, he admitted to owning at least one of the clubs.

3. During the early 1980s, Plaintiff hid assets from his then-wife, because they were going through a divorce and Plaintiff did not want her to have the property. Specifically, the title of the car he was driving–a Porsche–indicated that the owner was his nephew. In fact, however, Plaintiff was the owner of the car.

4. Plaintiff was arrested at least four times between 1979 and 1996; one of the four arrests resulted in a conviction. In 1979, Plaintiff was arrested for unlawfully carrying a weapon. In 1990, he was arrested for interference with a child custody order. In 1996, Plaintiff was arrested for unlawful flight to avoid prosecution of a burglary charge. In 1990, Plaintiff was arrested and subsequently convicted of attempt to evade and defeat income tax in the United States District Court for the Southern District of Texas. Plaintiff was sentenced to 5 years of probation and ordered to pay $17,922.68 in back taxes, interest and penalties.

5. In 1984, Plaintiff learned that he was being investigated for tax evasion and subsequently left the United States in 1985. Between 1985 to 1990, he lived outside the United States–in Lebanon–for the purpose of avoiding tax evasion prosecution. He was convicted of attempted tax evasion in 1990 when he returned to the United States. Additionally, during the last few years, Plaintiff has spent much of his time outside the United States. For example, in 2002, Plaintiff lived in the United States for 3 months. In 2003, Plaintiff lived in the United States for 2½ months, and in 2004, he lived in the United States for 5 months. In fact, Plaintiff was outside of the United States for at least 26 months from 2001 to 2004.

6. Plaintiff did not provide truthful information on his naturalization application,

although he swore to the accuracy of the information. For example, Plaintiff listed various periods of absence from the United States, but he failed to disclose his five-year absence from 1985 to 1990. Additionally, Plaintiff failed to disclose on the application that he was absent from the United States prior to October 8, 2003, although he admitted during trial that he reentered the United States on that date.

7. When asked by his attorney why he wished to become a United States citizen, Plaintiff replied that he did not want to continue to encounter immigration problems when he returns to the United States from abroad.

8. Naturalization is not a natural right, but a privilege. E.g., Taylor v. United States, 231 F.2d 856, 858 (5th Cir. 1956). The burden rests upon an applicant to prove that he has met the statutory qualifications to entitle him to the privilege, and all doubt with respect to these qualifications is resolved in favor of the Government. Taylor, 231 F.2d at 858. To be eligible for United States citizenship, an naturalization applicant must meet both the residency requirements and the good moral character requirement set forth in 8 U.S.C. § 1427(a).

**Residency Requirements**

9. The residency requirements for naturalization are: the applicant (1) has resided continuously as a Lawful Permanent Resident in the United States for at least five years prior to filing his naturalization application, and has been physically present in the United States for at least 30 months out of the five years; (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship; and (3) has resided within the State in which the applicant

filed the application for at least three months prior to filing. 8 U.S.C. § 1427(a).

10. Plaintiff has failed to show that he meets any of the residency requirements set forth in 8 U.S.C. § 1427(a). There is no credible evidence showing that Plaintiff was physically present in the United States for at least 30 months during the five years immediately preceding the filing of his naturalization application on May 5, 2004. See 8 U.S.C. § 1427(a)(1). Additionally, by Plaintiff's admission, the Court finds that Plaintiff has not resided continuously within the United States from the filing of the application on May 5, 2004 till present. The Court also finds that Plaintiff by his own admission did not reside in Texas, the State in which he filed his application, for at least three months prior to filing his application. See 8 U.S.C. § 1427(a)(1), (2).

11. The naturalization application indicates that during the relevant five-year period, Plaintiff was physically present in the United States for periods totaling at least half of the five years, although he did make several trips to Europe and Lebanon. However, the Court finds the information on the application unreliable. For example, during the relevant five-year period, Plaintiff admitted to being absent from the United States and reentered the United States on October 8, 2003; however, the application does not indicate that absence. Plaintiff also did not disclose on the application his absence from 1985 to 1990, although such disclosure was required.

12. Ms. DeMouy, the USCIS officer who conducted the October 29, 2004 interview, suspected that there were departures from the United States that Plaintiff had not disclosed on his application and asked Plaintiff to provide her a copy of his passport. Plaintiff never provided his 1989 passport to Ms. DeMouy. Ms. DeMouy learned

from a copy of Plaintiff's passport already in her file that there were at least seven additional trips to Lebanon that were not reported on the naturalization application.

**<u>Good Moral Character</u>**

13. To be eligible for United States citizenship, the applicant must also demonstrate that he has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States during the five years prior to filing his naturalization application. 8 U.S.C. § 1427(a).

14. The term "good moral character" is not defined in the Immigration and Nationality Act. However, 8 U.S.C. § 1427(e) provides that,

> [i]n determining whether the applicant has sustained the burden of establishing good moral character . . . the Attorney General shall not be limited to the applicant's conduct during the years preceding the filing of the application, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period.

8 U.S.C. § 1427(e).

15. Furthermore, courts have held that convictions from outside the five-year period may be considered when determining whether a naturalization applicant is, or has been, a person of good moral character. See <u>United States v. Hovsepian</u>, 359 F.3d 1144, 1166-67 (9th Cir. 2004) (<u>citing</u> <u>Santamaria-Ames v. I.N.S.</u>, 104 F.3d 1127, 1132 (9th Cir. 1996) (noting that convictions from the pre-regulatory period are "highly relevant" to, but not dispositive of, good moral character determination)).

16. The Court does not find Plaintiff to be a person of good moral character. The Court

notes that pursuant to 8 U.S.C. § 1427(e), the Court is allowed to consider Plaintiff's conduct at any time prior to the five-year period immediately preceding the filing of the naturalization application to determine if Plaintiff has met this requirement.

17. The Court finds that Plaintiff is not credible. During the first day of trial, Plaintiff insisted that he did not own any of the bars and clubs he managed and operated. Then during cross-examination the next day, he reluctantly admitted to owning at least one of the clubs. Plaintiff also tried to deny his tax evasion conviction facts by saying that the money he refused to declare as income was his mother's money. In fact, his tax evasion conviction resulted from his undeclared cash income from managing bars and clubs.

18. Plaintiff also admitted to defrauding one of his ex-wives by hiding assets from her during their divorce proceeding. Additionally, on the naturalization application, Plaintiff failed to disclose his various periods of absence from the United States, and he did not disclose all his various arrests until urged at the October 29, 2004 interview by the USCIS officer.

19. Also, the Court finds that Plaintiff is not a law-abiding person. He has been arrested four times, and he has twice fled to avoid prosecution–once to avoid burglary prosecution and next to avoid tax evasion prosecution. He remained outside the United States for five years between 1985 to 1990 to avoid being prosecuted for tax evasion.

20. In light of the evidence presented, the Court finds that Plaintiff is not a person of good moral character.

**Conclusion**

21.  For the reasons stated above, the Court concludes that Plaintiff has not satisfied either the residency requirements or the requirement of good moral character. Plaintiff's United States citizenship application is therefore DENIED.

Final Judgment shall issue accordingly.

SIGNED and ENTERED on the 23rd day of November, 2005.

_____
Janis Graham Jack
United States District Judge